Christian, J.,
delivered the opinion of the court.
This is an appeal from a decree of the Circuit court of Hanover county.
The facts disclosed by the record, so far as it is material to refer to them, are substantially as follows :
The appellee, Ragland, purchased of one George F. Booker, on the 16th September 1862, a tract of land lying in the county of Hanover, known as “Laurel Grove,” containing 340J acres, at the price of $25 per acre. He paid the purchase money in cash, in Confederate States treasury notes, then but slightly depreciated, and received a deed for the land.
Shortly after this purchase, Ragland authorized ’W. Goddin, a real estate auctioneer, to resell the laud for him, so that he should sustain no loss. Goddin, early in October 1862, sold the farm to the appellant, Carter, at the same price which Ragland had paid, but upon a credit of one, two, three and four years. Carter accordingly executed his four notes payable to Ragland for the sum of $2,147.87, with interest from the 16th September 1862, and payable at one, two, three and four years. A deed conveying the laud to Carter was executed by Ragland ; and the laud was then conveyed by Carter to Goddin, in trust to secure the payment of these notes as they became due.
Carter immediately took possession of the land, and has been in possession ever since. He has paid towards the purchase money only $1,000, which was paid on the 17th of October 1863, and was credited on the first bond. Two of the purchase money bonds fell due after the close of the war—one on the 4th day of October 1865, and the other on the 4th day of October 1866. But the appellant, it seems, never paid, or offered to pay, anything more on said bonds, except the sum of $1,000, which was paid in Confederate States treasury notes on the 17th October 1863. Thus matters stood between the parties until the year 1867, when the appellee directed *576 the trastee to advertise and sell the land in accordance with the terms of the trust deed. And thereupon the appellant filed his bill of injunction, asking that the sale of the land might be enjoined, and praying that the eourj. require the appellee to produce the bonds in court, “ so that they might be paid and cancelled in such manner and on such terms as to the court might seem just and proper.” An injunction was granted. The appellee answered the bill, setting out substantially the facts above stated, and insisted that he was entitled to receive, at least the fair value of the land, with interest (subject to a credit of $1,000, paid October 17th, 1863), in satisfaction of said notes and deed of trust. Depositions were taken to prove the value of the land in the present currency; and the court below, adopting the true value of the land “as the-most just measure of recovery,” entered its decree dissolving the injunction, and after crediting the $1,000 paid as of its nominal value, reduced the balance of the debt in the proportion that $20 per acre (the amount adopted by the court as its real value) bears to $25 per acre, the price at which it was sold, and directed the trustee to sell the land for the amount of the debt and interest thus ascertained, but upon terms of one-fourth cash, and balance at six, twelve and eighteen months, instead of for cash, as required by the said deed of trust; the appellee consenting to these terms, in order “ to guard against any possible sacrifice of the property.”
From this decree Carter appealed to the District court at Fredericksburg; which affirmed the decree of the Circuit court of Hanover: to which decree of affirmance an appeal was allowed to this court.
It will be observed that in this case, two of the purchase money bonds became due after the close of the war, when the currency in which they were stipulated to be paid had perished; and as to these a strict compliance with the contract of the parties has become *577 impossible. It is therefore clear that the nominal value of the currency agreed to be paid cannot be reduced (as in the case of Dearing's adm'x v. Rucker, 18 Gratt. 426) to its true value at the date of the maturity of the notes. It is equally clear that the ends of justice cannot be attained by scaling the Confederate currency to its value at the date of the contract. For this would be to permit the appellant to reap the advantage of his own default, and to have the title of the land confirmed in him for a .grossly inadequate price. The most equitable adjustment of the case made by the record, is to require that the appellant, who comes into a court of equity, asking that his obligations (for which he is confessedly in default) “ may be paid and cancelled in such a manner as to the court may seem just and proper',” should be put upon equitable terms. Those terms, under the circumstances of this case, manifestly are, that he must either give up the land or pay for it its reasonable value. Poague v. Greenlee, decided at the present term, and White v. Atkinson, 2 Wash. 94.
The court is therefore of opinion, that the said Circuit court ought to have put the said appellant to his election, either to give up the laud, and have the contract of sale vacated and annulled, and to receive the value of the Confederate States treasury notes (which he paid towards the purchase money,) as of the 17th October 1863, and to account for the rents and profits of the laud for the time it has been in his possession ; or if he elects to retain the land then he should be required to pay its reasonable value at the time of the sale, such value to be ascertained by a commissioner of said Circuit court, subject to a credit of the proportion which the amount he has paid bears to the amount he agreed to pay; the balance to carry interest from the 16th day of September 1862.
The court is, therefore, of opinion that the said decrees *578 of the District court, and of the said Circuit court, should both be reversed, and the cause remanded to said Circuit court of Hanover, for further proceedings to be had therein, in accordance with the principles herein announced.
Decree reversed..